FILED 07 FEB '12 14:18 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DARRELL L. HINSHAW, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:10-cv-01468-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| BAC HOME LOANS SERVICING LP; ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

Benjamin D. Knaupp
BENJAMIN D. KNAUPP, PC
254 N. First Avenue
Hillsboro, OR  97124

    Attorney for Plaintiff

Gregory J. Miner
BATEMAN SEIDEL MINER BLOMGREN CHELLIS & GRAM, PC
888 S.W. Fifth Avenue, Suite 1150
Portland, OR  97204

    Attorney for Defendants

JONES, Judge:

Plaintiff Darrell Hinshaw brings this action against defendants BAC Home Loans Servicing, LP ("BAC"), ReconTrust Company, NA ("ReconTrust"), and KeyBank, NA, seeking, among other things, to void a foreclosure sale of his home in September 2010, and to recover damages against BAC and ReconTrust for "wrongful sale" and breach of those defendants' duty of good faith and fair dealing.

The case is before the court on defendant BAC's and ReconTrust's motion (# 21) for summary judgment, which KeyBank has joined (# 26).

After reviewing the parties' submissions and the developing case law in this court and in other jurisdictions, for the reasons explained below I conclude that summary judgment is inappropriate and therefore deny defendants' motion.

FACTUAL BACKGROUND

The following facts largely are undisputed; any material disputed facts will be discussed in context.

On December 10, 2008, plaintiff signed a promissory note to KeyBank for a $275,000 loan secured by a first position deed of trust on plaintiff's real property located at 3747 SE 49th Avenue, Portland, Oregon. The deed of trust named Mortgage Electronic Registration Systems, Inc. ("MERS"), as the beneficiary acting solely as "nominee" for the lender. See Declaration of Representative of BAC ("BAC Decl."), Exhibit ("Exh.") 2. The deed of trust was recorded in Multnomah County on December 15, 2008. Id.

On December 22, 2008, Countrywide Home Loans, Inc. ("Countrywide"), acquired the promissory note from KeyBank through a document titled "ALLONGE." BAC Decl., Exh. 3.

The same day, KeyBank assigned the servicing rights on the note to Countrywide and notified

plaintiff that effective February 1, 2009, he should mail his payments to Countrywide.  At some

point, Bank of America acquired Countrywide Bank by merger, and Countrywide Home Loans,

Inc., changed its name to BAC, defendant in this action.  See BAC Decl., ¶¶ 5-6.

Plaintiff fell behind in his mortgage payments in January 2010.  According to plaintiff, he

fell behind because of an automobile accident in 2008, which caused him to lose his business,

although he received lost wages from an insurance company for a year.  Plaintiff's Response to

Defendants' Motion, Exh. 2, Affidavit of Darrell Hinshaw ("Hinshaw Aff."), p. 1.  On

January 20, 2010, BAC wrote plaintiff concerning a possible loan modification and inviting him

to apply.  BAC Decl., Exh. 5.  On February 16, 2010, plaintiff faxed his application for a loan

modification under the Home Affordable Modification Program ("HAMP") to Bank of America.

BAC Decl., Exh. 6; Hinshaw Aff., p. 1.

Meanwhile, on February 16, 2010, BAC sent plaintiff the first of several Notices of Intent

to Accelerate the Loan.  The first notice, Exh. 7 to the BAC Decl., informed plaintiff that he

could cure the default by paying $5,765.15, "plus any additional regular monthly payment or

payments, late charges, fees and charges, which become due on or before March 18, 2010."  On

February 25, 2010, BAC sent plaintiff an "Important Message about Your Loan," which stated

that the amount due as of March 1, 2010, included the March payment of $2,110.67, and the past

due sum of $5,611.15.  BAC Decl., Exh. 8.

On March 4, 2010, plaintiff made a cash payment of $2,110.67.  BAC Decl., ¶ 13.  BAC

applied that payment to the oldest outstanding unpaid month, December 2009.  Id.  On March 8,

2010, BAC sent plaintiff a second Notice of Intent to Accelerate.  BAC Decl., Exh. 9.  In this

notice, BAC informed plaintiff that he could cure the default by paying $5,611.15, "plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before April 7, 2010." Id. On March 30, 2010, BAC sent plaintiff an "Important Notice," which stated that the amount due as of April 1, 2010, included the April payment of $2,110.07, and the past due sum of $5,624.18. BAC Decl., Exh. 10. On April 8, 2010, BAC notified plaintiff that his February 2010 application for a loan modification was rejected. BAC Decl., Exh. 11; Hinshaw Aff., p. 1.

On April 9, 2010, plaintiff made a payment of $5,624.18 by personal check at a Bank of America branch office. BAC Decl., ¶ 18. Ten days later, on April 19, 2010, BAC notified plaintiff that it was returning his payment[1] for the following reason: "The funds remitted representing reinstatement of your loan were not sent via 'Certified' Funds." BAC Decl., Exh. 12.

On April 15, 2010, MERS assigned its beneficial interest in the deed of trust to BAC, and BAC appointed ReconTrust as the successor trustee. The assignment of the deed of trust and the appointment of successor trustee were both recorded in Multnomah County on April 19, 2010. BAC Decl., Exhs. 14 and 15.

On April 14, 2010, ReconTrust sent plaintiff a letter notifying him that his account had been referred to begin the foreclosure process. The letter outlines certain alternatives to foreclosure. Declaration of ReconTrust Representative ("ReconTrust Decl."), ¶ 2 and Exh. 1. On April 15, ReconTrust sent plaintiff a Notice of Default and Election to Sell. The notice,

---

[1]    The check sent to plaintiff was on a Bank of America account, not plaintiff's original check. See BAC Decl., Exh. 13.

4 - OPINION AND ORDER

which was recorded in Multnomah County on April 19, 2010, gave a date for the sale of

August 27, 2010.  ReconTrust Decl., Exh. 3.  On April 20, 2010, ReconTrust sent plaintiff a

statutory notice that he was in danger of losing his property if he did not pay $7,605.13 owed as

of April 20.  ReconTrust Decl., Exh. 4.  According to plaintiff, when he received the latter notice

on April 23, 2010, he

> was shocked, and immediately went to the Eastport branch of Bank of America
> where I had made the [$5,624.18] payment and spoke to the assistant branch
> manager. . . .  She reviewed the records, and although they had accepted my
> payment, because it was made 2 days past the dead line, the loan had been turned
> over to Recontrust.  She said she would see if there was anything that could be
> done to stop the process and contact me on Monday (this was a Friday).
>
> She called me on Monday and said there wasn't anything they could do.

Hinshaw Aff., p. 1.  According to the documents, also on April 20, ReconTrust sent plaintiff a

second notice stating that the amount owed as of April 20, 2010, was $15,392.29, and resetting

the foreclosure sale to September 27, 2010.  See ReconTrust Decl., Exh. 6.

BAC sent plaintiff four Loan Servicing Reinstatement Calculations in late April, on the

24th, 26th, 27th, and 28th.  BAC Decl., ¶ 23.  All four notices, Exhs. 16-19 to the BAC Decl.,

state that the net total due to reinstate the loan was $10,550.61, and must be paid with certified

funds or a money order.  The first two notices, Exhs. 16 and 17, state that the reinstatement

calculation is "Good Through" May 7, 2010; the second two, Exhs. 18 and 19, state that the

calculation is "Good Through" May 10, 2010.

On April 30, 2010, BAC notified plaintiff that his loan had been referred to BAC's

Foreclosure Review Committee.  The letter listed several options that "may" stop the foreclosure

process, provided a telephone number, and invited plaintiff to "tell us about your individual

situation and together we'll evaluate how one of these options may help." BAC Decl., Exh. 20.

On August 25, 2010, the following documents, which ReconTrust prepared and submitted, were recorded in Multnomah County: Affidavit of Mailing Notice of Sale; Notice of Sale; Affidavit of Mailing Notice to Grantor; Notice to Grantor; Affidavit of Publication; Affidavit of Posting and Service; and Affidavit of Compliance with Oregon SB 629 (2009). ReconTrust Decl., Exh. 7.[2]

According to plaintiff, after BAC returned the $5,624.18 check, he contacted the attorney who was handling his automobile accident to check on the status of settlement and to inform him about the foreclosure. His attorney told him to contact him about a month before the foreclosure sale date, and if the accident case had not yet settled, he would see what he could do to stop the foreclosure or postpone it. Hinshaw Aff., p. 2.

In July 2010, plaintiff learned that he had prostate cancer; he was scheduled for surgery in October. He notified his attorney of this development, and learned that the foreclosure sale had been delayed to September 27, 2010. According to plaintiff:

> [The attorney] told me when he made telephone calls[,] he was constantly transferred and put on hold. He was never able to speak with anyone with authority to make decisions regarding my situation. On September 14 he faxed a letter to Bank of America's Foreclosure Department explaining the situation regarding the auto accident; that he expected it to settle in 90 days, and that I would have sufficient funds to cure the default, and wanted to obtain the reinstatement amount. He also requested a postponement of the sale date. On September 16 the only return correspondence he received was the figure would be available September 24.

---

[2]    It is not clear whether the Affidavit of Mailing Trustee's Notice of Sale to Occupant (If Applicable), which is listed on the recording cover sheet, was among the documents recorded, but whether it was does not appear to be material. See ReconTrust Decl., Exh. 7.

On September 20 I received an approval letter from Social Security
Administration stating that I would be receiving a back payment check for a year
of benefits and monthly payments starting in October.

* * *

I then called Bank of America, spending several hours on the phone. . . . I was
told the amount I would have to pay was $18,774.59. I told them I was able to
give them $15,000.00 (which I could borrow). They said I had to pay the full
amount. I explained my situation regarding my auto accident, when I expected the
settlement to occur, also about the Social Security claim being expedited, and that
when I received either settlement I would have enough funds to cure the default. I
also told them about my cancer and surgery date. I asked if they could please give
me a little more time and requested a postponement on the sale of my house.
They apologized and said there wasn't anything they could do.

I was told there are only about four people in the postponement department, and
they cannot take phone calls. One person said she would send them an email
explaining my situation and ask them to call me. She also gave me the
postponement department's fax number. On September 21 I sent a fax requesting
a postponement along with a copy of the letter dated September 14 that my
attorney had previously faxed explaining about my auto accident, when he
expected the case to be settled, and requesting a postponement. I also included a
copy of the approval letter from the Social Security Administration stating I would
be receiving a back payment claim and future monthly payments. The next day
September 22nd, the attorney's office handling the Social Security Disability case
also sent a fax to the postponement department of Bank of America stating they
represent me and [were] working with the processing center to expedite the
payment. They also encouraged Bank of America to contact them if they needed
additional information or had any questions.

Hinshaw Aff., p. 2. Plaintiff never heard back from BAC. He called BAC on September 28 and

learned that his house had been sold to KeyBank on the 27th.

KeyBank initiated an FED action in Multnomah County Circuit Court in January 2011.

For reasons not apparent on the record, plaintiff retains possession of the house.

7 - OPINION AND ORDER

STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

DISCUSSION

Plaintiff alleges three claims in his first amended complaint. The first claim, titled "Wrongful Sale," against BAC and ReconTrust, focuses on MERS and is premised on alleged violations of the nonjudicial foreclosure statutes. Specifically, plaintiff alleges that MERS was not registered to do business in Oregon; that MERS lacked authority to assign the beneficial rights under the trust deed, thus invalidating BAC's assignment to ReconTrust; and that the affidavit of compliance that Recontrust recorded before the foreclosure sale was false, thus rendering the sale void.

8 - OPINION AND ORDER

Plaintiff's second claim, against BAC and ReconTrust, alleges that BAC and ReconTrust

breached their duties of good faith and fair dealing in that they:

> failed to have personnel available, adequately trained, and/or supervised, resulting
> in conflicting and contradictory information being given to plaintiff, and a form of
> institutional "passing the buck" which led to institutional failure to deal fairly and
> in good faith with plaintiff . . . .

First Amended Complaint, ¶ 16.  In his third claim, against KeyBank, plaintiff seeks an order

quieting title in his favor.

I have thoroughly reviewed and considered the parties' submissions and arguments, and

for the following reasons, conclude that summary judgment is not appropriate.

I.      Validity of the Foreclosure Process

Factual and legal questions preclude summary judgment in favor of BAC and ReconTrust

with respect to the foreclosure process itself.  In so ruling, I make the following observations:

        a.      Oregon Licensing/Registration Requirement

I agree with defendants that Oregon law does not require MERS to be registered to do

business in Oregon with respect to foreclosure proceedings.  See discussion of this issue in

Staton v. BAC Home Loans Servicing L.P., 2011 WL 2213800 at *4 (D.Or. June 3, 2011)(Aiken,

C.J.).

        b.      Assignment of the Promissory Note

To the extent that plaintiff asserts, as defendants contend, that KeyBank's assignment of

its interest in the note to BAC via Countrywide should have been recorded before the nonjudicial

foreclosure, Oregon law contains no such requirement.  As Magistrate Judge Stewart observed in

James v. ReconTrust Co., 2011 WL 3841558 at *11 (D.Or. Aug. 26, 2011), "[ORS 86.735(1)]

9 - OPINION AND ORDER

makes no mention of recording a transfer of the promissory note, [as] opposed to the deed of trust. A promissory note is not a conveyance of real property and is not recorded or even susceptible of recordation." Id. (citations omitted); see also Tabb v. One West Bank, FSB, 2011 WL 4448752 at *10 (D.Or. Aug. 26, 2011), in which Judge Stewart further explained that "[U]nder Oregon law, 'a promissory note secured by a mortgage on real property [can be] transferred by indorsement without a formal assignment of the mortgage.' ORS 86.110(1); see also ORS 86.715 (mortgage statutes apply to trust deeds)."

        c.      MERS' Authority to Assign Beneficial Interest in Deed of Trust

Plaintiff's primary argument is that MERS is not a proper beneficiary under the deed of trust and therefore lacked authority to assign its beneficial interest to BAC. That issue is one on which the judges of this court have yet to reach consensus. In Bertrand v. SunTrust Mortgage, Inc., 2011 WL 1113421 (D.Or. Mar. 3, 2011), I rejected the same arguments plaintiff makes here, but since then, numerous opinions by members of the court have reached various conclusions and, in at least one case, postponed any decision until the case law in this jurisdiction is more fully developed. See Staton v. BAC Home Loans Servicing, 2011 WL 2213800 at *6 (D.Or. June 3, 2011).

As explained below, the record in this case contains evidence from which the finder of fact could conclude that BAC and ReconTrust breached the implied duty of good faith and fair dealing. That, combined with valid questions concerning the role of MERS in nonjudicial foreclosures, compels me to deny summary judgment at this juncture. I also note that the Oregon

legislature may be poised to enact legislation favoring homeowners,[3] adding further reason for me to decline ruling on the validity of this particular foreclosure at this time.  Consequently, I deny summary judgment on plaintiff's claim for wrongful foreclosure.[4]

II.      Good Faith and Fair Dealing

Under Oregon common law, the implied contractual duty of good faith and fair dealing requires that the parties to a contract not act in a way that destroys or injures the rights of the other, or frustrates or defeats the object of the contract.  Barinaga v. JP Morgan Chase & Co., 749 F.Supp.2d 1164, 1178 (D.Or. 2010) (citations omitted).  The contractual good faith requirement "'emphasizes faithfulness to an agreed common purpose' and is designed to 'effectuate the reasonable contractual expectations of the parties.'"  Id. (quoting Best v. United States Nat'l Bank of Oregon, 303 Or. 557, 562-63, 739 P.2d 554 (1987)).  Only "the objectively reasonable expectations of the parties that will be examined in determining whether the obligation of good faith has been met."  Tolbert v. First Nat'l Bank of Oregon, 312 Or. 485, 494, 823 P.2d 965 (1991).  Moreover,

> "The obligation of good faith does not vary the substantive terms of the bargain
> . . . , nor does it provide a remedy for an unpleasantly motivated act that is
> expressly permitted by contract. . . ."  The duty of good faith is implied "only if
> the parties have not agreed to an express term that governs the issue."

Barinaga, 749 F.Supp.2d at 1178 (citations omitted).

---

[3]      See, e.g., Brent Hunsberger, *Oregon Attorney General Kroger Issues Emergency Rules to Protect Distressed Homeowners from Wrongful Foreclosures*, The Oregonian, Jan. 27, 2012.

[4]      The court expresses no opinion concerning the validity of the Affidavit of Compliance ReconTrust signed on August 6 and recorded on August 25, 2010.

Even assuming, without deciding, that the nonjudicial foreclosure was procedurally proper, evidence of record is sufficient to present a jury question as to whether BAC and ReconTrust dealt with plaintiff in good faith with respect to his efforts to bring his loan current and stop the foreclosure. Indeed, the record reflects that both plaintiff's and his attorney's efforts to negotiate even a postponement of the sale fell, at best, on deaf ears. For example, the trust deed permits BAC, at its option, to require payment of reinstatement funds to be made by cash, money order, certified check, bank check, treasurer's check or cashier's check. BAC Decl., Exh. 2, p. 11. In the first Notice of Intent to Accelerate, dated February 16, 2010, plaintiff was informed merely that he must pay in "good funds." BAC Decl., Exh. 7. In the notice of February 25, 2010, BAC instructed plaintiff with respect to payment only as follows:

1. Please
   - don't send cash
   - don't staple the check to the payment coupon
   - don't include correspondence
   - include coupon with payment

2. Write the account number on the check or money order.

3. Make the check payable to
   BAC Home Loans Servicing, LP
   Attn: Remittance Processing
   PO Box 515503
   Los Angeles, CA 90091-6803.

BAC Decl., Exh. 8. And despite the requirement stated in the February 16, 2010, notice that plaintiff must pay $5,765.15 on or before March 18, 2010, BAC accepted the partial payment plaintiff made by personal check on March 4, 2010.

In the second Notice of Intent to Accelerate, dated March 8, 2010, BAC instructed plaintiff to pay $5,611.45, on or before April 7, 2010, again in "good funds." BAC Decl., Exh. 9.

Plaintiff paid that amount by check on April 9, 2010. In returning the funds to plaintiff later in April, Bank of America explained that "it is necessary to return these funds to you for the following reason: [X] The funds remitted representing reinstatement of your loan were not sent via 'Certified Funds.'" BAC Decl., Exh. 12. That requirement, of "certified funds," appears nowhere in the notices BAC sent to plaintiff before it returned his funds. And as plaintiff states in his affidavit, when he spoke with BAC's representative, he was told that his loan had been referred to foreclosure because his payment was two days late, not because it was "partial" or not in certified funds, as defendants now insist was required.

The evidence supports plaintiff's claim that BAC and ReconTrust did indeed engage in an institutional form of "passing the buck." First Amended Complaint, ¶16. The overwhelming impression presented by the record in this case is that of a homeowner beset by financial and health problems trying to negotiate, to no avail, with his mortgage holder to postpone foreclosure until he had sufficient funds, from an automobile accident settlement and from the Social Security Administration, to bring his loan current and keep it there. There is no evidence that these defendants responded to plaintiff's (or his attorney's) telephone calls, met with him in person, or made any other effort to work with him on a solution,[5] despite having offered in writing to do so. See, e.g., BAC Decl., Exh. 20 (dated April 30, 2010):

---

[5]     I also note that defendants make much of the fact that plaintiff did not submit additional applications for loan modification in late April and May, 2010, after foreclosure proceeding had been initiated. I find plaintiff's failure to do so unremarkable given that his first application, which he mailed in February 2010, was rejected just a few weeks earlier, on April 8, 2010. See BAC Decl., Exhs. 6 and 11.

13 - OPINION AND ORDER

We want to work with you and are here to help, so please read below about the various options available through BAC Home Loans Servicing, LP to help you avoid foreclosure. Then, call us . . . to tell us about your individual situation and together we'll evaluate how one of these options may help.

One of those options was a repayment plan, "[b]ased on your financial circumstances and investor requirements. . . . Id.

In summary, I cannot determine the validity of the foreclosure as a matter of law at this time, and evidence supports plaintiff's breach of the duty of good faith and fair dealing claim. Summary judgment is, therefore, denied.

## CONCLUSION

For the reasons stated, defendants' motion for summary judgment (# 21) and joinder in that motion (# 26) are denied.

DATED this 7th day of February, 2012.

ROBERT E. JONES
U.S. District Judge

14 - OPINION AND ORDER